NOT FOR PUBLICATION (Doc. No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
EASTERN CONSTRUCTION &              :
ELECTRIC, INC.,                     :
                                    :
            Plaintiff,              :   Civil No. 10-1238 (RBK/KMW)
                                    :
        v.                          :   **OPINION**
                                    :
UNIVERSE TECHNOLOGIES, INC.,        :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

Plaintiff Eastern Construction & Electric, Inc. ("Eastern") sued Defendant Universe Technologies, Inc. ("Universe") for amounts due under two contracts between the parties. Although Eastern properly served Universe with the Summons and Complaint, Universe failed to respond. The clerk entered default against Universe, and Eastern now moves for default judgment. For the reasons discussed below, the Court enters default judgment for the amount due under the contracts ($318,310.00) and for Eastern's costs in this litigation ($491.86). The Court denies Eastern's motion for default judgment regarding prejudgment interest and attorneys' fees because Eastern did not provide adequate support for those amounts. The Court grants Eastern fourteen days to submit substantiated prejudgment interest calculations and a legal basis for awarding attorneys' fees.

   **I.     BACKGROUND**

Universe has various contracts with the United States to perform work at McGuire Air Force Base in Burlington County, New Jersey. Universe entered into two subcontractor

agreements with Eastern for work at the base.  Under the agreements, Eastern was to invoice Universe as it completed portions of the work.  Universe agreed to pay Eastern's invoices within fifteen days from when the U.S. Government paid Universe.  To that end, Subcontractor Agreement Number SP0500-01-D-0175/0410 ("the '410 Agreement") provides:

> [Universe] agrees to pay [Eastern] progress payments that reflect the percentage of the task satisfactorily completed.  Invoices shall be submitted by [Eastern] to [Universe] with appropriate documentation for approval . . . .  The sum total of all progress payments to [Eastern] will not exceed Four Hundred Sixty-Six, Four Hundred Sixty-Two Dollars ($466,462.00), unless a change in the scope of work occurs during the completion of the project.

(Ex. A.2 to Cert. of Vick Luis Bolanos dated July 12, 2010 ("Bolanos Cert."), at 53). Subcontractor Agreement Number SP0500-01-D-0175/0216 ("the '216 Agreement") contains substantially the same payment provision except that it caps payment under the contract at $2,376,050.00.  (Ex. A.1 to Bolanos Cert. at 21).  The '410 Agreement also provides that "[a]ny amounts that are not paid when due shall bear interest at a rate of 1 1/2 % per month until paid or the maximum rate permitted by law, whichever is higher."  (Ex. A.2 to Bolanos Cert. at 3).  The '216 Agreement does not address interest on unpaid invoices.

Eastern claims that Universe has not paid for work invoiced under the agreements. Specifically, Eastern claims that Universe received final payment from the U.S. Government regarding the '216 Agreement in April 2009 and the '410 Agreement in October 2007. According to a Certification from Eastern's President, Universe owes Eastern $309,010.00 under the '217 Agreement and $9,300.00 under the '410 Agreement.  (See Bolanos Cert. ¶ 7).

Eastern filed its Complaint in March 2010 and served Universe at its office in Jefferson, Maryland on May 18, 2010.  The Complaint asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  Universe did not respond to Eastern's

2

Complaint. On June 15, 2010, Eastern filed a request for entry of default. The clerk entered default on June 17, 2010. Eastern now moves for entry of default judgment. Eastern seeks judgment for the $318,310.00 due under the two agreements, as well as $4,097.50 in attorneys' fees, $491.86 in litigation costs, and an unspecified amount of prejudgment interest.

## II.     JURISDICTION

"Before entering a default judgment against a party that has not filed responsive pleadings, 'the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" Bank of Am., N.A. v. Hewitt, No. 07-4536, 2008 U.S. Dist. LEXIS 90719, at *5 (D.N.J. Nov. 7, 2008) (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).

Here, the Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the case involves citizens of different states and the amount in controversy exceeds $75,000.00. Eastern is a New Jersey corporation with its principal place of business in New Jersey. Universe is a Maryland Corporation with its principal place of business in Maryland. Regarding the jurisdictional amount, Eastern seeks more than $300,000.00 in damages. Thus, the parties are completely diverse and the amount in controversy exceeds the jurisdictional minimum.

Regarding personal jurisdiction over Universe, Rule 4(k) provides that "a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Fed. R. Civ. P. 4(k); see Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987). New Jersey law "confers jurisdiction over nonresidents to the extent allowed under the United States Constitution." Horton v. Martin, 133 Fed. App'x. 859, 860 (3d Cir. 2005) (citing N.J. Ct. R. 4:4-4). Under the Due Process Clause of the Fourteenth Amendment, a court may exercise specific jurisdiction

over a nonresident defendant if: (1) the defendant "'purposefully directed' his 'activities' at the forum, <u>Marten v. Godwin</u>, 499 F.3d 290, 296 (3d Cir. 2007) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)); (2) the plaintiff's claims "'arise out of or relate to'" at least one of those specific activities, <u>id.</u> (quoting <u>Helicopteros Nacionales de Colombia, S. A. v. Hall</u>, 466 U.S. 408, 414 (1984)); and (3) the court's exercise of jurisdiction "otherwise 'comport[s] with fair play and substantial justice,'" <u>id.</u> (quoting <u>Burger King</u>, 471 U.S. at 476).

Those three jurisdictional factors are satisfied in this case. First, Universe purposefully directed its activities at New Jersey because it contracted with a New Jersey company to provide services at McGuire Air Force Base in New Jersey. Second, Eastern's claims are based entirely on its service contracts with Universe. Third, because Universe contracted with Eastern for services within New Jersey, subjecting Eastern to suit in New Jersey does not offend basic notions of "fair play and substantial justice." <u>See</u> <u>Burger King</u>, 471 U.S. at 476. Thus, this Court has specific jurisdiction over Universe regarding Eastern's claims.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter default judgment against a properly served defendant who fails to file a timely response. <u>See</u> <u>Anchorage Assoc. v. V.I. Bd. of Tax Rev.</u>, 922 F.2d 168, 177 n.9 (3d Cir. 1990). The entry of default judgment is largely a matter of judicial discretion. <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). However, before entering default judgment, the Court must conduct a three-part analysis.

First, the Court must find that the plaintiff properly served the defendant and that the defendant failed to respond. <u>See</u> Fed. R. Civ. P. 55(a) (stating that default is appropriate if the defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise"); <u>see</u> <u>also</u> <u>Johnson v. Dayton Elec. Mfg. Co.</u>, 140 F.3d 781, 783-84 (8th Cir. 1998)

4

(holding that entry of default under Rule 55(a) must precede entry of default judgment). Second, the Court must ascertain whether "the unchallenged facts constitute a legitimate cause of action." DirecTV, Inc. v. Asher, No. 03-1969, 2006 U.S. Dist. LEXIS 14027, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, 10A Federal Practice and Procedure, § 2688, at 63); DirecTV, Inc. v. DeCroce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004). Default judgment is permissible only if the plaintiff's factual allegations establish a right to the requested relief. See Berman v. Nationsbank of Del., No. 97-6445, 1998 U.S. Dist. LEXIS 2221, at *1 (E.D. Pa Mar. 2, 1998). Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Asher, 2006 U.S. Dist. LEXIS 14027, at *1. Additionally, although "default establishes the defaulting party's liability for the well-pleaded allegations of the complaint," United States v. Grant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003), "default does not establish liability for the amount of damages claimed by the plaintiff," Bank of Am., N.A. v. Hewitt, No. 07-4536, 2009 U.S. Dist. LEXIS 48695, at *4 (D.N.J. June 9, 2009). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

Third, even if default judgment is permissible and the plaintiff's damages are reasonably certain, the court must weigh the following three factors to determine whether default judgment is appropriate: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a meritorious defense, and (3) whether the defendant's delay is due to culpable conduct. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). "In weighing these factors, [the] the district court[] must remain mindful that, like dismissal with prejudice, default

5

is a sanction of last resort." GP Acoustics, Inc. v. Brandnamez, LLC, No. 10-539, 2010 U.S. Dist. LEXIS 84244, at *2 (D.N.J. Aug. 17, 2010).

**IV. ANALYSIS**

**A. Entry of Default**

The clerk properly entered default under Rule 55(a). Eastern filed its Complaint on March 9, 2010. Eastern submitted a notarized statement from its process server affirming that he personally served Paul Lanthier, Program Manager for Universe, with Eastern's Summons and Complaint on May 17, 2010. Thus, Eastern properly served Universe within 120 days after filing its Complaint. See Fed R. Civ. P. 4(m) (a plaintiff must serve the summons and complaint within 120 days from filing). Universe did not respond to the Complaint within twenty-one days after service. See Fed. R. Civ. P. 12(a) (defendant must respond within twenty-one days of service). Thus, default was proper because Universe received fair notice of the claims against it but did not respond.

**B. Eastern's Allegations**

Plaintiff asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing. To state a claim for breach of contract under Maryland law,[1] a plaintiff must "allege 'with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant.'" Yousef v. Trustbank Sav., F.S.B., 568 A.2d 1134, 1137 (Md. Ct. Spec. App. 1990) (quoting Continental Masonry Co. v. Verdel Constr. Co., 369 A.2d 566, 569 (Md. 1977)). Under Maryland law, every contract includes an implied covenant of good faith and fair dealing that requires the parties to "refrain from doing anything that will have the effect of frustrating the right of the other party to receive

---

[1] The agreements contain choice-of-law provisions declaring that Maryland law applies to all disputes arising from the agreements. (See Ex. A.1 to Bolanos Cert., at 10; Ex. A.2 to Bolanos Cert., at 9).

the fruits of the contract between them." Questar Builders, Inc. v. CB Flooring, LLC, 978 A.2d 651, 675 (Md. 2009); see Blondell v. Littlepage, 991 A.2d 80, 90-91 (Md. 2010); Automatic Laundry Serv., Inc. v. Demas, 141 A.2d 497, 501-02 (Md. 1958). "'Subterfuges and evasions violate the obligation of good faith in performance.'" Electr. Store, Inc. v. Cellco P'ship., 732 A.2d 980, 989 (Md. Ct. Spec. App. 1999) (quoting Restatement (Second) of Contracts, § 205 comment d). However, Maryland "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing; the allegations making up such a claim should be pursued under a plaintiff's breach of contract claim." Magnetti v. Univ. of Md., 909 A.2d 1101, 1105 n. 3 (Md. Ct. Spec. App. 2006). A claim for breach of the covenant of good faith and fair dealing is "merely part of an action for breach of contract." Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc., 190 F. Supp. 2d 785, 794 (D. Md. 2002).

     Eastern's allegations state a claim for breach of contract and breach of the implied covenant of good faith and fair dealing. Eastern alleges that: (1) Universe is contractually obligated to pay Eastern for properly invoiced "progress payments;" (2) Eastern invoiced Universe for services rendered under the agreements; and (3) Universe has not performed its payment obligation. Those allegations state a claim for breach of contract. Additionally, because the evasion of contractual obligations violates the implied covenant of good faith and fair dealing, Eastern's allegations also state a claim for that violation. See Blondell, 991 A.2d at 90 (the covenant of good faith and fair dealing "concerns the performance and enforcement of the contract itself") (internal quotation marks and citations omitted); Electr. Store, Inc., 732 A.2d at 989 ("'Subterfuges and evasions violate the obligation of good faith in performance'") (quoting Restatement (Second) of Contracts, § 205 comment d).

### C. Eastern's Damages

Eastern seeks default judgment against Universe for $318,310.00 due under the two agreements, as well as $4,097.50 in attorneys' fees, $491.86 in litigation costs, and an unspecified amount of prejudgment interest.

As noted above, default does not establish liability for the full amount of damages claimed by the plaintiff. See Bank of Am., 2009 U.S. Dist LEXIS, at *4. The Court must conduct an independent "inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), 183 F.3d at 155. Default judgment is appropriate only if the Court determines that "there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d. Cir. 1997). Applying this standard, the Court concludes that Eastern is entitled to default judgment regarding the $318,310.00 due under the agreements and $491.86 in costs, but it does not provide substantiated calculations to support an award of prejudgment interest or any legal basis for awarding attorneys' fees.

Default judgment regarding the amounts due under the agreements is appropriate because those amounts are "susceptible to mathematical computation" and supported by competent proof. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (noting that default judgment is appropriate when a plaintiff's claimed damages are "susceptible to mathematical computation"). Both the '216 Agreement and the '410 Agreement provide that Universe is obligated to pay Eastern for work performed and properly invoiced under the agreements. Eastern submits a Certification from its President affirming that Universe has $309,010.00 in unpaid invoices under the '216 Agreement and $9,300.00 under the '410 Agreement. Because those amounts are subject to

mathematical computation and are supported by testimony from Eastern's President, the Court may enter default judgment in the amount of $318,310.00.

However, Eastern does not provide adequate support for prejudgment interest regarding the unpaid invoices. Eastern's motion for default judgment does not include a proposed prejudgment interest rate or any interest calculations. Thus, the Court finds that there is an insufficient basis upon which to enter default judgment regarding prejudgment interest at this time.[2] See Acosta v. Nat'l Packaging, Inc., No. 09-701, 2010 U.S. Dist. LEXIS 75847, at *9 (D.N.J. July 28, 2010) (denying motion for default judgment as to prejudgment interest because plaintiff did not provide any support for its proposed interest rate). The Court will nevertheless allow Eastern fourteen days to make a submission calculating the specific amount of prejudgment interest due under the agreements and providing a detailed explanation of that calculation.

Regarding attorneys' fees, Eastern does not identify a legal basis for awarding attorneys' fees in this case. Federal Rule of Civil Procedure 54(d) provides that a party may make a motion for an award of attorneys' fees. See Fed. R. Civ. P. 54(d)(2) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."). However, Rule 54(d) does not create a right to fees, it merely "recognizes the possibility of attorney's fees . . . and establishes a procedure for asserting a right to such an award." See Abrams v. Lightolier Inc., 50 F.3d 1204, 1224 (3d Cir. 1995). Thus, courts look to applicable substantive law to determine whether a party is entitled to fees. Id. In a diversity action such as this one, the right to recover fees "is a

---

[2] The '410 Agreement provides for prejudgment interest. However, it does not provide a clear interest rate to be applied to amounts due. Rather, it states that "[a]ny amounts that are not paid when due shall bear interest at a rate of 1 1/2 % per month until paid or the maximum rate permitted by law, whichever is higher." (Ex. A.2 to Bolanos Cert. at 3). Eastern does not submit a proposed interest rate or any proposed interest calculations. Thus, the Court finds that Eastern has not established this element of its claimed damages with reasonable certainty.

matter of state substantive law." Mitzel v. Westinghouse Elec. Corp., 72 F.3d 414, 417 (3d Cir. 1995) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y., 421 U.S. 240, 260 n.31 (1975); Abrams, 50 F.3d at 1224).  Under Maryland law, "the prevailing party in a [contract dispute] may not recover attorneys' fees as an element of damages or costs unless . . . the parties . . . have an agreement to that effect . . . ." Thomas v. Gladstone, 874 A.2d 434, 437 (Md. 2005).

Eastern provides no basis for the award of attorneys' fees in this case.  It does not identify any provision in the agreements that entitle it to recover fees, nor does it cite any applicable statute providing for fee shifting in this case.  Thus, it is not appropriate for the Court to enter default judgment regarding Eastern's claimed attorneys' fees of $4,097.50.  The Court will nevertheless allow Eastern fourteen days to provide a basis for its claimed attorneys' fees.[3]

Regarding costs and expenses, Rule 54(d)(1) provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  Although the court has discretion in awarding costs, there is a strong presumption that the court should award costs to the prevailing party.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987) (holding that "[s]ection 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)"); In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 462 (3d Cir. 2000) (noting that there is a presumption in favor of awarding

---

[3] The Court further notes that even if attorneys' fees are legally recoverable, a party may generally recover only "reasonable" fees.  See Rode v. Dellaricprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The party seeking attorneys' fees bears the burden of proving that the requested fees are reasonable.  Id.  A party satisfies this burden by submitting evidence "supporting the hours worked and the rates claimed." Id. (quoting Hensley v. Echerhard, 461 U.S. 424, 433 (1983)).  The party must also establish that the claimed hourly rate is reasonable by submitting evidence of "the prevailing market rates in the relevant community." Interfaith Comm'y Organization v. Honeywell Intern, Inc., 426 F.3d 694, 703 (3d Cir. 2005).  Here, Eastern has submitted detailed billing statements that support the hours worked and the rates claimed.  However, Eastern has submitted no evidence demonstrating that the rates claimed represent the prevailing market rates in the relevant community.  If Eastern renews its request for attorneys' fees, it must provide the Court with a legal basis for awarding attorneys' fees as well as evidence that its claimed rates are reasonable.

costs to the prevailing party). The "prevailing party" is the party who succeeds on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit . . . ." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791 (1989) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978), overruled on other grounds by Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598 (2001) (defining "prevailing party" in the civil rights context)). Rule 54(d)(1) permits recovery of costs and expenses enumerated in 28 U.S.C. § 1920. See Abrams, 50 F.3d at 1223.

Eastern provides the following itemization of its costs and expenses: (1) $350.00 in filing fees; (2) $106.66 in process server fees; and (3) $35.20 in copying costs.[4] (See Ex. B to Bolanos Cert.). These costs and expenses are all taxable under Rule 54(d). First, Eastern is the prevailing party in this litigation because it obtained a judgment on the merits of its claims. Second, all of Eastern's claimed costs are covered by the taxable costs enumerated in 28 U.S.C. § 1920. See 28 U.S.C. § 1920(4) (providing that cost of photocopying of documents "necessarily obtained for use in the case" is taxable); 28 U.S.C. § 1920(1) (providing that filing fees charged by the clerk of the court are taxable); Hurley v. Atl. City Police Dep't, No. 93-260, 1996 U.S. Dist. LEXIS 14088, at *25-26 (D.N.J. Sept. 17, 1996) (holding that costs for private process servers are taxable under 28 U.S.C. § 1920). Thus, default judgment is appropriate regarding Eastern's $491.86 in costs.

---

[4] Eastern submits two Certifications of Professional Services Rendered from its attorneys that itemize attorneys' fees and costs. (See Ex. B to Bolanos Cert.). Those certifications include an ambiguous charge for $27.20 by "ACCURINT SEARCH-UNIVERSE TECHNOLOGIES IINC. [sic]" (Ex. B to Bolanos Cert., at 2). The Court interprets this to be a copying charge. However, in the event it is a charge related to service of process, it is nevertheless a taxable cost. See Hurley, 1996 U.S. Dist. LEXIS 14088, at *25-26.

11

### D. Factors Warranting Entry of Default Judgment

The above analysis does not end the Court's inquiry. Even where default judgment is permissible, the Court must consider three factors to determine whether default judgment is appropriate: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a meritorious defense, and (3) whether the defendant's delay is due to culpable conduct. See Chamberlain, 210 F.3d at 164. Applying those factors, default judgment is appropriate in this case.

First, Eastern is harmed by Universe's failure to respond to the Complaint. Universe owes Eastern $318,310.00 under the agreements. Universe cannot evade liability for its contractual obligations by simply refusing to respond to Eastern's Complaint. Second, neither the Complaint nor the agreements suggest that Universe has a meritorious defense.[5] See GP Acoustics, Inc. v. Brandnamez, LLC, No. 10-539, 2010 U.S. Dist. LEXIS 84244, at *10 (D.N.J. Aug. 17, 2010) (noting that a "[d]efendant's failure to answer makes it practically impossible for the Court to determine whether [the defendant has] a meritorious defense") (internal quotation marks and citations omitted). Third, Universe is "presumed culpable" because it "failed to answer, move, otherwise respond," and the record does not suggest any good faith justification

---

[5] The Court notes that both agreements contain mandatory arbitration provisions. (See Ex. A.1 to Bolanos Cert., at 10; Ex. A.2 to Bolanos Cert., at 9). However, those provisions do not in and of themselves constitute a meritorious defense. A defendant can waive his right to arbitration if he fails to timely assert that right. See Nino v. Jewelry Exch., Inc., 609 F.3d 191, 214 (3d Cir. 2010) (holding that a defendant waived his right to arbitrate claims because he failed to timely assert that right). Thus, several courts have held that default judgment is proper even if parties agreed to arbitrate their claims. See Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat, 289 F.3d 434, 438 (6th Cir. 2002) (denying motion to vacate default judgment based on right to arbitration because the defendant waved its right to arbitrate by failing to respond to the complaint); Lovelace Respiratory Research Inst. v. Cambridge Sys., No. 10-2202, 2010 U.S. Dist. LEXIS 119556, at *4 n.2 (D. Md. Nov. 10, 2010) (same). Those courts concluded that a defendant's failure to respond to a complaint by moving to dismiss or stay the action in favor of arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, constitutes a waiver of the right to arbitrate. See Gen. Star, 289 F.3d at 438. The Court finds this authority persuasive and consistent with Third Circuit precedent regarding waiver of arbitration rights. See Nino, 609 F.3d at 214 (holding that a party waived his right to arbitration by not asserting it in a timely manner). If Universe believes that Eastern must arbitrate its claims, Universe should have moved to compel arbitration. Because Universe did nothing, default judgment is appropriate notwithstanding the agreements' arbitration provisions.

for Universe's failure to respond.  Slover v. Live Universe, Inc., No. 08-2645, 2009 U.S. Dist. LEXIS 17919, at *6 (D.N.J. Mar. 9, 2009).  It is therefore appropriate for the Court to enter default judgment against Universe.

## V. CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part Eastern's motion for default judgment.  The Court grants default judgment as to Eastern's claims for breach of contract and breach of the covenant of good faith and fair dealing.  The Court grants default judgment for $318,801.86, which consists of $318,310.00 in amounts due under the agreements and $491.86 in taxable costs incurred in this litigation.  The Court denies Eastern's request for prejudgment interest on the amounts under the agreements and attorneys' fees incurred in this litigation.  The Court nevertheless grants Eastern fourteen days to provide substantiated calculations of prejudgment interest due under the agreements and a legal basis for awarding attorneys' fees.  If necessary, the Court will issue an amended judgment to include prejudgment interest and/or attorneys' fees.  An appropriate Order shall enter today.


Dated: 1/6/11                                             /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge